Case 4:25-cv-01788   Document 7   Filed on 04/22/25 in TXSD   Page 1 of 8

United States District Court
Southern District of Texas
**ENTERED**
April 22, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AHMAD BEYHAQI, § § Plaintiff, § § v. § § KRISTI NOEM, Secretary of U.S. § Department of Homeland Security; § TODD M. LYONS, Acting Director, § Immigration and Customs § Enforcement, § § Defendants. § | Civil Action No. H-25-1788 |

## TEMPORARY RESTRAINING ORDER

Pending before the Court is Plaintiff's Motion for Temporary Restraining Order (Document No. 3). The Court, having considered the Plaintiff's motion, and accompanying declarations, is of the opinion that the Plaintiff's motion should be granted.

This case involves the Department of Homeland Security's termination of a nonimmigrant student's legal status to study in the United States. Under federal law, noncitizens are permitted to enroll in government-approved academic institutions, gaining access to the United States through the acquisition of an F-1 non-immigrant student visa issued by the U.S. Department of State. *See* 8 U.S.C. § 1101(a)(15)(F)(i). Once a noncitizen student gains entry with an F-1 visa, the international student is permitted to remain in the United States for a specified

duration of status, so long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f). Foreign students present in the United States are subject to a myriad of regulations, including maintaining: (1) a full course of study; (2) satisfactory academic progress; and (3) adherence to campus rules. A termination of a nonimmigrant F-1 visa holder's status by the Department of Homeland Security ("DHS") is governed by 8 C.F.R. § 214.1(d), which allows DHS to terminate an F-1 visa holder's status when: (1) a previously granted waiver under 8 U.S.C. § 1182(d) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.[1]

Here, Plaintiff Ahmad Behyaqi ("Beyhaqi"), a native of Iran, is an F-1 student visa holder actively enrolled at Texas A&M University, and has maintained legal status in the United States to pursue a Doctor of Philosophy in engineering since August 2023. On April 10, 2025, Beyhaqi was notified by Texas A&M University that his Student and Exchange Visitor Information System record ("SEVIS") was terminated and F-1 visa was revoked. The only justification for Beyhaqi's termination as a legal alien is found in the online SEVIS system, which states that

---

[1] *See Court Order Granting Temporary Restraining Order,* Jane Doe, *et. al.,* v. Pam Bondi, *et. al.,* No. 25- cv-01998-VMC (N.D. GA. 2025) (containing a relatively similar set of facts and circumstances).

2

Beyhaqi was "identified in criminal records check and/or has had their visa revoked."[2] No further explanation of any alleged criminal violation or opportunity to explain any alleged criminal violation was ever provided to Beyhaqi.

Based on the foregoing, on April 17, 2025, Beyhaqi filed suit in this Court pursuant to federal question jurisdiction against Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Lyons in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), (collectively, "Defendants"). First, Beyhaqi alleges violations of the Due Process Clause of the Fifth Amendment to the United States Constitution, contending that Defendants terminated his SEVIS record and F-1 status without notifying him of the decision or providing a meaningful opportunity to be heard. Second, Beyhaqi alleges a violation of the Administrative Procedures Act ("APA"), contending that Defendants have no statutory or regulatory authority to terminate his legal status, thereby constituting arbitrary and capricious agency action. Beyhaqi now moves for a Temporary Restraining Order ("TRO") to: (1) "enjoin defendants from terminating his F-1 status and his SEVIS record;" and (2) "require the Defendants to set aside their termination determination during the pendency of this matter."[3]

---

[2] *See Plaintiff's Complaint*, Document No. 1, Exhibit 1 at 2 *(Beyhaqi's SEVIS Event History)*.

[3] *See Plaintiff's Motion for Temporary Restraining Order*, Document No. 3 at 2.

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a TRO, an applicant must satisfy the following four elements: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury; (3) the threatened injury outweighs any harm the order might cause to the defendant; and (4) the injunction will not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). The decision of whether to grant or deny a TRO is within the Court's discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017). To show immediate and irreparable harm, a plaintiff must demonstrate it is likely it will suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). However, a "[s]pectulative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)). In general, a TRO is not appealable. TROs are "usually effective for only very brief periods of time, far less than the time required for an appeal . . . and are then generally supplanted by appealable temporary or permanent injunctions." *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994).

The Court finds that based on the allegations in the Complaint and the specific facts alleged therein, Beyhaqi has demonstrated a substantial likelihood of success

4

on the merits of his claims in Counts 1, 2, and 3: that Defendants' termination of Beyhaqi's legal status is in violation of constitutionally protected due process rights and the APA. The Supreme Court has made clear that all persons in the United States, including aliens whether their presence here is lawful, unlawful, temporary, or permanent enjoy due process constitutional protections. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (holding that the Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law). Here, Beyhaqi contends that by denying him notice and an opportunity to be heard, Defendants unilaterally violated Beyhaqi's due process rights.[4] Beyhaqi further contends that no reason was provided for the termination other than vague language related to a criminal record check, failing to either: (1) comport with due process; or (2) constitute anything other than arbitrary and capricious agency action in violation of the APA. Additionally, an independent review of the record and applicable law reveals that Beyhaqi is likely to show that DHS's authority to terminate his F-1 student status is narrowly circumscribed by federal regulation. *See* 8 C.F.R. § 214.1(d) (showcasing the limited pathways by which DHS can terminate F-1 status). Considering none of the conditions outlined in 8 C.F.R. § 214.1(d) are applicable

---

[4] Beyhaqi further contends that Defendants failed to provide notice about their decision to terminate his F-1 student status and SEVIS record, only learning of DHS's actions through notification by Texas A&M University. *See Plaintiff's Motion for Temporary Restraining Order*, Document No. 3 at 8.

5

here, Beyhaqi is likely to show that Defendants' termination of his F-1 status was not in compliance with federal law.

Regarding the irreparable harm element, the Court finds that Beyhaqi faces irreparable harm in the absence of immediate relief. Beyhaqi contends that the revocation of his F-1 status has resulted in economic hardship, an inability to continue his educational program, and potential detention and subsequent deportation.[5] Beyhaqi further contends that he is effectively barred from working or studying in the United States and is at risk of immediate detention and deportation. Based on the foregoing, the Court finds irreparable harm exists such to warrant the issuance of temporary injunctive relief.

Regarding the balance of harms and the public interest factors, the Court finds that the agency action alleged in this matter causes the elements to favor the Plaintiff at this stage of the case. *See Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (holding that "[t]here is generally no public interest in the perpetuation of unlawful agency action") (quoting *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021)).

The Court finds based on its review of the motion, accompanying declarations, and applicable law that Beyhaqi has satisfied the four elements necessary to obtain a TRO. Beyhaqi has shown a substantial likelihood of success on the merits; substantial threat of irreparable injury; that the threatened injury

---

[5] *See Plaintiff's Motion for Temporary Restraining Order*, Document No. 3 at 9.

outweighs the harm this Order might cause to Defendants; and that the injunction will not disserve the public interest.

Additionally, Federal Rule of Civil Procedure 65(a)(2) states: "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." The Supreme Court has held that "clear and unambiguous notice" of the court's intention to consolidate must be given. *See University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981). Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for Temporary Restraining Order (Document No. 3) is **GRANTED**. The Court further

**ORDERS** that Defendants are **ENJOINED** from terminating Plaintiff Ahmed Beyhaqi's student status and SEVIS record. The Court further

**ORDERS** that Defendants shall reinstate Plaintiff Ahmed Beyhaqi's student status and SEVIS authorization, retroactive to April 10, 2025.

**ORDERS** that Defendants shall set aside their termination determination until such time as the Court issues the final determination.

This Order will remain in effect for fourteen days, until May 6, 2025.[6] No bond is required.[7] The Court further

**ORDERS** that Plaintiff's Complaint (Document No. 1), and Plaintiff's Motion for a Temporary Restraining Order (Document No. 3) be designated for full public access. The Court further

**ORDERS** that the Court hereby consolidates the forthcoming preliminary injunction hearing into a trial on the merits in accordance with Federal Rule of Civil Procedure 65(a)(2). The Court further

**ORDERS** that the trial on the merits will be held before the Court on Friday, May 2, 2025, at 1:30 PM.

SIGNED at Houston, Texas, on this 22nd day of April, 2025, at 3:45 PM.

*David Hittner*
DAVID HITTNER
United States District Judge

---

[6] The Court has the authority, if deemed applicable and necessary, to extend the TRO for not more than fourteen additional days. Fed. R. Civ. P.65(b)(2).

[7] "[T]he amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial court," and the court "may elect to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).